ROBERTS *v.* LETCHWORTH.

Opinion delivered February 19, 1917.

1. RECEIVERS—DUTY TO FILE INVENTORY.—While it is better practice in all cases for receivers to file inventories of the estates over which they are appointed, it will not be held to have.been error for the chancellor to fail to require the filing of an inventory, when the complaining party did not request the filing óf an inventory until all the assets of the estate had been disposed of.

2. RECEIVERS—VALUE OF BUILDING.—A receiver can not be charged with the value of a building belonging to the estate, when title to the metal roof therein, and machinery inside the same remained in the vendors, and where such articles were ordered returned by the chancellor.

3. RECEIVERS—ORAL ORDERS OF CHANCELLOR.—It is better practice for chancellors to make all orders concerning a receivership, after notice, and to place the same on record, but creditors can not complain of oral orders made by the court in the absence of a showing of injury to them.

4. RECEIVERS—PURCHASING ASSETS FOR HIMSELF.—While receivers should not purchase assets of the estate for themselves, such a purchase will not be disturbed where the estate is not injured thereby.

5. RECEIVERS—APPOINTMENT OF INTERESTED PARTIES.—An interested party may be appointed receiver upon application of the creditors.

6. RECEIVERS—PAYMENT OF OWN CLAIM.—It is improper to permit a receiver to sell property belonging to the estate and appy it to the payment of his own judgment.

Appeal from Pulaski Chancery Court, *Jno. E. Martineau*, Chancellor;   reversed.

*Emmet Vaughan*, for appellants.

1. An inventory of the estate should have been ordered filed by the receiver.   34 Cyc. 246.

2. The building was an asset in the hands of the receiver; he should have been charged with its value. He had no right to dismantle it and parcel it out to creditors who had liens for material.   61 Fed. 546; 68 N. E. 20.

3. It is reversible error for a chancellor to direct a receivership verbally.   His orders should all be made a matter of record.   It was also error to allow the receiver to buy part of the property.

4. It was error to appoint a receiver who has an attachment suit pending—a party in interest—and to allow him to buy. 61 Fed. 546, 549. It was the receiver's duty, immediately upon his appointment, to intervene in his own attachment suit and move to dissolve. Kirby's Digest, § 4055.

5. The chancellor erred in approving the receiver's final report, showing a sale privately, and applying the proceeds to his own debt. He was allowed to plunder the estate and the poor laborers got "*left*." A decree should be entered for $409.27, the amount of the preferred claims against the receiver.

*W. A. Leach*, for appellee.

1. It is not mandatory that an inventory should be filed. It was a matter of discretion for the court and no abuse is shown. No proper showing was made and no injury resulted.

2. There was a vendor's, or materialman's lien on the saw mill building; the receiver was powerless. It was never an asset in the hands of the receiver. The owners removed the roofing, under the directions of the chancellor.

3. It is not against the law, nor public policy, to appoint a party receiver who has an attachment suit pending.

4. No principle of equity was violated in permitting the receiver to buy lumber no one else would have. None of the creditors could use it and no one else wanted it. Under all the proof the receiver discharged his duties properly, and no injury is shown. He accounted for all property that came into his hands. The burden was on appellants to sustain their objections. The findings of the chancellor are sustained by the evidence. The decree should be affirmed.

HUMPHREYS, J. This suit was commenced in the Pulaski chancery court for the purpose of winding up the partnership affairs of Brown & French. It became necessary to appoint a receiver. The first receiver appointed was C. R. Powell, who resigned, and the

court appointed J. W. Letchworth, one of the creditors, receiver in succession.    J. W. Letchworth was appointed receiver at his own suggestion on application of the other creditors in order to save fees and other expenses incident to the receivership.    At the time C. R. Powell resigned he filed a report showing a small balance due him for expenses.    He turned the assets, which consisted largely of lumber and household effects in and about a sawmill located at Letchworth, Arkansas, over to his successor, J. W. Letchworth.    During the administration of C. R. Powell he had been ordered to file an inventory but the matter was overlooked.    No order was made by the chancellor requiring J. W. Letchworth, as receiver in succession, to file an inventory.    No request was made by appellants for him to do so until September 21, 1915, at which time disposition had been made of practically all the assets in his hands.

The matter proceeded until the receiver in succession filed his second report, at which time the other creditors filed exceptions to the report, which were overruled by the chancellor.

This appeal is prosecuted to correct alleged errors of the chancellor in overruling the exceptions to said report.

(1)    The first alleged error urged for reversal is that the chancellor refused to require the receiver to file an inventory.    The statutes of Arkansas do not require him to do so; no order had been made by the court requiring J. W. Letchworth, as receiver, to file an inventory until disposition had been made of the assets. The estate was small and the assets had been converted either into money or applied to the payment of his own judgment at the time the creditors made their application.    It is the better practice in all cases for receivers to file inventories of the estates over which they are appointed, but we think this a belated request and cannot find that the chancellor committed reversible error in refusing to require the receiver to file an inventory.

(2) The second alleged error consisted in the refusal of the chancellor to charge the receiver with $400.00 for the sawmill building. This building had a metal roof and when the roof was bought the seller had reserved the title in himself until the purchase money was paid. A like reservation of title had been retained in all machinery in the mill building. The chancellor directed the receiver to return the roof and machinery to the parties from whom Brown & French had purchased same. This he did, which left nothing except an uncovered, dismantled sawmill building. In this condition, and where located, the mill building had no market value. It would not be proper to charge the receiver with the original cost of constructing the building, nor to charge him with its value if it could not be sold.

(3-4) The third ground urged for reversal is that the chancellor made oral orders with reference to the disposition of a part of the lumber and permitted the receiver to buy a portion thereof. It were better to make all orders after notice and to place them of record, but unless some injury has resulted to the creditors for the want of notice, or on account of oral orders, they cannot be heard to complain. The burden of their complaint in this regard is that the receiver sold to, and charged himself with about fifteen or twenty thousand feet of lumber at the price of $65.00, which amount had been agreed upon between him and the chancellor. The evidence is to the effect that there was not enough lumber of the same dimensions to make marketable lots for car shipments. It was mostly cull, scrap stuff. As a general rule, receivers should not be permitted to buy assets from themselves. J. W. Letchworth lived near the mill and was the only person who could make use of this character of lumber. An effort was made to sell it, which failed, and as a last resort the receiver was permitted by the chancellor to take it for the lump sum of $65.00. No injury resulted to the creditors; in fact, the sale was a benefit to them. The chancellor's act in this respect is to be commended rather than condemned.

(5)   The fourth alleged error raised the questions: First, of appointing parties in interest as receivers; and second, in permitting them to buy the assets. As a matter of policy, it is perhaps better to appoint disinterested parties to act as receivers, but in this case the chancellor appointed J. W. Letchworth on the written application of the creditors. As stated above, receivers should not be permitted to buy the assets at private or public sale. If, however, there is no market for the property and his purchase redounds to the good of the creditors, as in this case, the act should be and is approved.

(6)   The fifth alleged error consists in permitting the receiver to sell property in his hands and apply it to the payment of his own judgment. At the time J. W. Letchworth was appointed receiver in succession to C. R. Powell he had an attachment suit pending against the firm of Brown & French. He proceeded to take judgment in the attachment suit and issued an execution. He allowed certain property of the firm of Brown & French to be levied upon and sold under the execution, and sold a part of the property himself and turned the proceeds over to the sheriff, all to be applied on his own judgment. His relationship as receiver and attaching creditor was wholly inconsistent. If he intended to prosecute his attachment suit and to collect his claim in full to the exclusion of the other creditors, he should never have accepted the receivership. Having sought and elected to take the receivership, it was his duty to abate or suspend the attachment suit and to present his claim to the court for allowance. Equity will treat that done which ought to have been done. Therefore, his judgment will be treated as filed and allowed as were the other claims. The receiver should be held to account for any property in his possession belonging to the firm of Brown & French not otherwise accounted for; also the proceeds of any property sold under his writ of attachment or execution; also moneys he collected from sales of property and turned to the sheriff on his own judgment and any other moneys

collected under the writ of attachment or execution by said sheriff.

For the error indicated the decree is reversed with directions to the chancellor to charge the receiver in accordance with this opinion and to pro rate the balance in the hands of the receiver among the creditors, including the judgment claim of the receiver.